· SEARS, ROEBUCK & CO. *v.* UNITED STATES (No. 771).[1] ·

IMITATION BRONZE STATUARY MADE OF SPELTER.

Paragraphs 149 and 158, tariff act of 1909, have distinct fields of application. Paragraph 149, relative to cast hollow ware, has a long legislative and judicial history, here reviewed, and it appears such a ware must be made of cast iron. The importation is made of spelter. It is dutiable as assessed under paragraph 199, tariff act of 1909, as a manufacture of metal.

United States Court of Customs Appeals, January 11, 1912.

APPEAL from Board of United States General Appraisers, Abstract 26563 (T. D. 31866).

[Affirmed.]

*Lester C. Childs* for appellants.

*Wm. L. Wemple,* Assistant Attorney General (*Frank L. Lawrence* on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

Appeal from a decision of the Board of General Appraisers involving two classes of merchandise. The more serious controversy concerns the classification by the collector at the port of Chicago of certain imitation bronze statuary. They are made of spelter. The classification for dutiable purposes was there made under the provisions of paragraph 199 of the tariff act of 1909 as a manufacture of metal not specially provided for.

Contention is made by the importers, who come here as appellants from the decision of the Board of General Appraisers, that the merchandise is properly classifiable for dutiable purposes under the provisions of paragraph 149 of that act, which in language follows:

149. Cast hollow ware, coated, glazed, or tinned, one and one-half cents per pound.

The correctness of this assessment for dutiable purposes depends upon the construction to be given the term "cast hollow ware" and the scope allotted that phrase.

· The proper interpretation thereof has, and we think correctly, been held by the Board of General Appraisers and the courts, under the various preceding tariff acts, to be controlled by the legislative history of the enactment. The first appearance of the term "hollow ware" was in the tariff act of March 2, 1861. In that act it read:

* * * On hollow-ware, glazed or tinned, two cents and a half per pound; on all other castings of iron not otherwise provided for, twenty-five per centum ad valorem.

Aside from the controlling force of the word "other" as used in the provision, it was written in a paragraph devoted solely to cast-iron productions.

Its next appearance was in the tariff act of July 14, 1862, wherein the language was:

On hollow-ware, glazed or tinned, one-half cent per pound.

---

[1] Reported in T. D. 32203 (22 Treas. Dec., 129).

In this act it appears as a part of section 3, which is devoted to other kinds of iron than cast iron; but the immediate provisions surrounding this are devoted to cast-iron articles. .

Section 8 of the same act, however, provides:

On hollow-ware and vessels of cast iron, not otherwise provided for, one cent and one-fourth per pound.

In the act of June 30, 1864, it is provided:

On hollow-ware, glazed or tinned, three and one-half cents per pound.

In this act it appears in the immediate group of cast-iron articles and in an extended provision devoted wholly to iron and steel products, the sole exception being that of tin plates.

The act of March 3, 1883, provided: ·

Hollow-ware, coated, glazed, or tinned, three cents per pound.

In this act it appeared with many enumerated kinds of metal, iron and steel.

Under this act the scope of the provision was contested. It was sought by importers to have classified thereunder for dutiable purposes certain blue and white kitchen utensils, consisting of pots, kettles, saucepans, coffeepots, and similar ware made of sheet steel and glazed or enameled. The Government contended that the early history and constant use of this provision by the courts indicated a congressional intent to confine the scope of the words "hollow ware" as appearing in the act without qualification to hollow ware of cast iron. On appeal to the United States Circuit Court, Southern District of New York, the case was disposed of by direction of the court as follows: ·

Upon examination of the prior acts I am satisfied that Congress was of the understanding that "hollow ware" meant vessels of this general kind, which we have here, made of cast iron. For the reason, therefore, that there seems to have been a congressional meaning given to the words "hollow ware" and embodied in statutes before the passage of the act of 1883, I assume that Congress intended to use the words with the same meaning in the later act that it did in the prior act. ' Verdict directed in favor of the defendant. Strausky v. Erhardt (52 Fed. Rep., 808).

Pending the decision in this case, which was had in November, 1892, the tariff act of October 1, 1890, became a law. The provision reappears in that act as paragraph 163, undoubtedly prompted by the then existing legislation. The paragraph was made to read:

. 163. Cast hollow-ware, coated, glazed, or tinned, three cents per pound.

It appears in the identical language in the tariff act of August 27, 1894, as paragraph 136, and in the tariff act of July 24, 1897, as paragraph 150.

Further contention was made as it appeared in the tariff act of 1897 that it included teapots of antique appearance made of cast iron with wrought-iron handles and expensive bronze covers. The Board of General Appraisers held, no doubt for the reason that they were not ·

entirely or substantially of cast iron, that the merchandise was not dutiable under the provisions of paragraph 150 as cast hollow ware, but as manufactures of iron. The board reviewed in that case the history of this legislation and the customs interpretation of many years in the following succinct language:

The term "hollow ware" has been construed by the Treasury Department, this board, and the courts to mean cast-iron kitchen ware. In T. D. 3669, published July 24, 1878, the department held that certain frying pans were dutiable as vessels of cast iron, there being no provision at the time for hollow ware. In T. D. 8527, published November 8, 1887, the department held that the term "hollow ware," which appeared for the first time, included only cast-iron kitchen utensils. In G. A. 105 (T. D. 10414) this board held to the same effect, and the same ruling was laid down in Strausky *v.* Erhardt (52 Fed. Rep., 808). In the act of 1890 the word "cast" was added so as to make the provision read "cast hollow ware," showing congressional confirmation of the rulings referred to. Fiske *v.* Henarie (142 U. S., 459), Sessions *v.* Romadka (145 U. S., 29). With these rulings, extending over a period of thirty years, before us, we must hold that the articles in question are not included within the term "cast hollow ware" as used in the tariff. There are further circumstances which militate against these pots and cause them, according to our view, to fall without the meaning of the term. Morimura Brothers, G. A 6722 (T. D. 28795).

There can be no reasonable question, therefore, that at the time of the enactment of the tariff act of 1909 the words "cast hollow ware," as they appear in the preceding tariff acts, had been given such a construction by the courts and customs officials as to have a well-settled meaning. In the tariff act of 1909, however, we find two provisions upon the subject. The one is in the exact language of the three previous tariff acts. It is the provision under which claim is made by the importers here. It is numbered and reads as follows:

149. Cast hollow ware, coated, glazed, or tinned, one and one-half cents per pound.

The identical language in previous tariff acts having been given the well-settled construction that it did not extend to other than cast-iron ware, could not in any sense ordinarily be held in this tariff act to include such articles as are here imported admittedly made of spelter.

The other provision in the act of 1909, which is noted and to which the importers point as an argument, is as follows:

158. Table, kitchen, and hospital utensils, or other similar hollow ware, of iron or steel, enameled or glazed with vitreous glasses, but not ornamented or decorated with lithographic or other printing, forty per centum ad valorem.

Reading paragraph 158, we find in its terms no language which enlarges the scope of paragraph 149 *per se.* The two paragraphs were enacted at the same time. Any enlargement Congress may have intended in the scope of paragraph 149 must be found in the language of paragraph 158. If paragraph 158 is the foundation of appellants' rights, claim should have been made thereunder. The fact that Congress reenacted paragraph 149 in exact terms and provided a new paragraph (158) leads to the inference that the latter

was intended to include a subject other than that covered by the former. Any analysis of the separate provisions is here unnecessary. Suffice it to say that each has a broad and distinct field of application other than is contained in the other. The merchandise, however, is by the terms of paragraph 158 excluded therefrom, nor is claim made thereunder. Consequently we can discover no aid for appellants by reason of the enactment of paragraph 158, either as the foundation of a substantive right or as a legislative interpretation.

We are, therefore, of the opinion that upon this branch of the case the importers' contention is without substantial merit.

The second branch of the case concerns certain alleged Christmas-tree ornaments. The articles are in imitation of cherries, apples, and other fruits. They were assessed for dutiable purposes by the collector at the same port under the provisions of paragraph 438 of the tariff act of 1909 as artificial fruit. They are claimed to be dutiable as toys, and alleged to be used as Christmas-tree ornaments. No serious contention is made upon this branch of the case, and it is so clearly without merit that we give it no extended consideration.

No testimony was introduced concerning this merchandise or its uses, but it is manifest from the appearance thereof that it is equally suitable for millinery ornamentation as it is for the decoration of Christmas trees and can in no appreciable sense be considered to be intended as a plaything. Illfelder v. United States (1 Ct. Cust. Appls., 109; T. D. 31115); Carson, Pirie, Scott & Co. v. United States (2 Ct. Cust. Appls., 386; T. D. 32112).

*Affirmed.*